# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | ) Case No. 2:10CR00002-004 |
| | ) |
| v. | ) **OPINION AND ORDER** |
| | ) |
| **STEVEN F. RIGGS, II,** | ) By: James P. Jones |
| | ) United States District Judge |
| Defendant. | ) |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Timothy W. McAfee, Timothy W. McAfee, PLLC, Norton, Virginia, for Defendant.*

The defendant in this criminal case has filed a Motion to Withdraw Guilty Plea, which I will deny for the reasons stated below.

The defendant, Steven F. Riggs, II, was charged along with others with participating in a conspiracy to possess with intent to distribute and distribute oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C.A. §§ 841 and 846 (West 1999 & Supp. 2011). The government contended that Riggs participated in the conspiracy by facilitating the travel by drug addicts from Virginia to Florida in order to obtain illicit prescriptions of pain medication from unscrupulous physicians, which pills he both shared with the addicts and used himself or sold. On May 3, 2010, he entered a guilty plea to this charge, without

the benefit of a plea agreement with the government. The plea was accepted, and the case referred for preparation of the Presentence Investigation Report ("PSR").

Thereafter, the defendant obtained new counsel, and after considerable delay, a sentencing hearing was held. A number of witnesses testified at the hearing, including defendant Riggs. After all of the evidence was presented, the hearing was adjourned without sentence being imposed, in order to allow the court an opportunity to further consider the defendant's objections to the calculation of his Sentencing Guideline range, as proposed by the probation officer in the PSR.

A few days later, the defendant filed the present motion seeking to withdraw his prior guilty plea, based on the testimony received at the sentencing hearing.

Federal Rule of Criminal Procedure 11(d)(2)(B) permits the withdrawal of a plea of guilty after acceptance but before sentence if "the defendant can show a fair and just reason for requesting the withdrawal." A defendant has no absolute right to withdraw his plea, *United States v. Bowman*, 348 F.3d 408, 413 (4th Cir. 2003), because it is a matter within the court's discretion, *United States v. Battle*, 499 F.3d 315, 319 (4th Cir. 2007). In deciding the motion, the court should consider:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or otherwise involuntary; (2) whether the defendant has credibly asserted his legal innocence; (3) whether there has been a delay between entry of the plea and filing of the motion; (4) whether the defendant has had close assistance of counsel; (5) whether withdrawal will cause prejudice to the government; and (6) whether withdrawal will inconvenience the court and waste judicial resources.

*United States v. Ubakanma,* 215 F.3d 421, 424 (4th Cir. 2000) (citing *United States v. Moore,* 931 F.2d 245, 248 (4th Cir.1991)) (footnote omitted). An appropriately conducted Rule 11 proceeding "raise[s] a strong presumption that the plea is final and binding." *United States v. Lambey,* 974 F.2d 1389, 1394 (4th Cir. 1992); *see also United States v. Puckett,* 61 F.3d 1092, 1099 (4th Cir.1995).

The PSR described Riggs' participation in the drug trafficking conspiracy as follows:

> On April 20, 2010, an ATF special agent interviewed Virginia Galloway. Galloway said that she was approached in approximately November 2008 by Steven Riggs with the proposition of going to a doctor in Florida to obtain prescription pain pills. Riggs told Galloway she could make up a story about being involved in a motor vehicle accident and that she was in pain. She said that Mr. Riggs took her to Florida on two occasions and that she was prescribed sixty 80 milligrams OxyContin pills, ninety 30 milligram pills and a number of Valium pills and that the doctor only asked her questions and performed no type of physical examination either time. She said that she used her medical insurance to reduce the costs of the prescriptions, and that each time, Riggs paid for the travel expenses, the doctor visits, and the balance owed on her prescriptions. Galloway said her agreement with Riggs was that each of them would keep 50% of the pills from the prescriptions. Galloway said that she stopped going to Florida with Riggs after the second trip, but she said that she allowed Mr. Riggs to use her vehicle to make two additional trips to Florida.
>
> On April 20, 2010, an ATF special agent interviewed Jimmy Perry. Perry said that he was approached in approximately December 2008 by Steven Riggs with the proposition of going to a doctor in Florida to obtain prescription pain pills. Riggs told Perry he could make up a

story about being in pain.  He said that Mr. Riggs took him to Florida on two occasions and that he was prescribed sixty 80 milligrams OxyContin pills, ninety 30 milligram Percocet pills and ninety Valium pills and that the doctor only asked him questions and performed no type of physical examination either time.  He said that on the first trip, Riggs paid for the travel expenses, the doctor visits, and the prescriptions, and that Riggs kept all but ten of each of the pills.  Perry said that his agreement on the second trip that Riggs took him to Florida was that he (Perry) would pay for everything and that Riggs would get ten of the pills from each.  Perry said that she stopped going to Florida with Riggs after the second trip.  He also stated that Riggs carried a nickel plated revolver with him on both of the trips that Perry took with him, and Perry said that he had purchased pills for himself and friends from Mr. Riggs on about ten occasions, and that he paid Riggs $120 per eighty milligram OxyContin each time.

On April 20, 2010, an ATF special agent interviewed Kevin Cobb.  Cobb said that he was approached by Steven Riggs' girlfriend, Michelle Anderson, with the proposition of going to a doctor in Florida to obtain prescription pain pills.  Riggs provided Cobb with a medical packet which Riggs had generated with Cobb's name on everything to use for his initial doctor visit.  He said that Mr. Riggs and Ms. Anderson took him to Florida on two occasions, the first occurring in about October 2008.  He said that on the first trip, Riggs paid for the travel expenses, the doctor visits, and the prescriptions, and that Riggs kept all but ten of each of the pills.  Cobb said that the agreement on the second trip was that he and Riggs would each pay half of the expenses and the prescriptions would also be split in half.  Cobb said that he stopped going to Florida with Riggs after the second trip.

(PSR ¶¶ 71-73.)

The PSR also recited that Riggs himself was interviewed by an ATF agent on November 23, 2009. Riggs admitted to the agent that he had taken individuals to Florida to obtain prescription pain medication, and had received a portion of their pills. He named six separate individuals taken to Florida, including Sam Sawtell and Vanessa Sykes. Riggs told the agent that he had sold some of the pills he had received, but only to finance his future trips to Florida.

At a later proffer session with the government on March 31, 2010, Riggs changed his story somewhat, claiming that he had only taken four people to Florida to get drugs. He also stated that each trip to Florida had cost him between $1,000 and $1,200. According to the agent, Riggs offered no explanation as to how he could afford such trips on his job income of $1,600 per month, if he was only selling a few pills out of each prescription he obtained.

At the sentencing hearing, the defense called as witnesses Virginia Galloway, Venessa Sykes, Jimmy Perry, Kevin Cobb, and Michelle Anderson, all of whom were mentioned in the PSR. While they all agreed that they had travelled with Riggs to Florida in order to obtain prescription pain medication in the approximate amounts as set forth in the PSR, they denied that there was any agreement between them and Riggs to obtain the drugs in order to resell them. The defense also called Kenneth Newton, the central player in the charged conspiracy, previously sentenced by this court, who testified that he had not dealt with Riggs.

The government called James Jessee, an indicted coconspirator already sentenced, who testified that he had gone to Florida with Riggs on two occasions and that on one of those trips, he had given Riggs half of the pills he received from the doctor's prescription. He said that he bought pills from Riggs later on one or two occasions and that he knew that Creed Logston, another indicted and convicted coconspirator, had also purchased pills from Riggs.

Riggs testified on his own behalf at the sentencing hearing. He denied that there had been any agreement with anyone to sell or distribute any of the pills he received from the trips to Florida. He said that the purpose of going to Florida with the others was to obtain drugs cheaply in order to "feed our own addiction." (Tr. Sentencing Hr'g 146, June 21, 2011.) He admitted that he had sold some of the pills — he estimated 50 — when he had been unable to obtain money from his family to pay the expenses of going to Florida, but that the people he took to Florida did not know that he was selling pills.

Riggs argues in support of his motion that he has made a credible assertion that he is innocent of the charge of conspiracy, and had his prior counsel correctly advised him that he likely would not have been convicted at trial, he would not have pleaded guilty to that charge.

In fact, however, Riggs has always claimed that he did not engage in the conspiracy charged, even at the time of his guilty plea. He agreed at that time,

however, that the government had sufficient proof to convict him and decided that a guilty plea was in his best interest.

At Riggs' change of plea hearing, the prosecutor represented that the government would show, if the case went to trial, that Riggs

> introduced numerous individuals within the conspiracy and others to the system of traveling to Florida and the specific doctor which would write the prescription for OxyContin. In particular, one individual was James Jessee that he took to Florida. In exchange for taking Mr. Jessee to Florida Mr. Riggs received half of Mr. Jessee's prescription.

(Tr. Plea Hr'g 27, May 3, 2010.) Riggs stated under oath at the change of plea hearing that he did not dispute or contest any of these facts.

Later in the change of plea proceedings, I described for Riggs the nature of the crime of conspiracy, as the court is required to do by Federal Rule of Criminal Procedure 11(b)(1)(G). After a brief recess for Riggs to speak privately with his attorney, the following colloquy occurred:

> THE COURT: All right. Mr. Riggs, have you had an adequate opportunity to talk with your attorney?
>
> THE DEFENDANT RIGGS: Yes, Your Honor.
>
> THE COURT: And do you have any questions of me about any of the advice that I've given you, or about anything else relating to your guilty plea?
>
> THE DEFENDANT RIGGS: Well, I just, when you were, you know, describing the definition of a conspiracy it was a partnership between multiple persons undertaking criminal activity. I admit that I took other people to Florida. I admit that I, myself, sold a few pills. But the purpose and the intention of going down there wasn't for, you

know, for a bunch of drugs to be sold. In fact, there was never any agreement between myself or anyone else for drugs to be sold. That's what I just told my attorney. I wasn't going to Florida with the intention of selling pills, but I did sell a few pills to be able to finance the next trip to Florida, if that makes any sense. The main purpose of going down there for the pills was because I had a drug problem, and OxyContin are really expensive, and, you know, I found a cheap way that I could obtain OxyContin and I was just feeding my addiction. And when I took Mr. Jessee, who is the only co-conspirator that's listed on there that I took to Florida, but when I took him I didn't know he was going to take other people and they were going to engage in any kind of drug distribution conspiracy. But like I said, I admit that I did wrong, and I admit that I can't defend myself against the charge of trying to distribute the drugs because, like I said, I myself, I've already admitted I distributed drugs, but that wasn't the intent or purpose of going down there to Florida to obtain these drugs. I just wanted to put that on the record.

      THE COURT: Well, Mr. Riggs, let me tell you this. You don't have to plead guilty. And if you do not wish to plead guilty you're entitled to a jury trial. And the Government would be required to prove the elements of conspiracy, as I explained to you. They would be required to prove that there was an agreement; that you knew about this agreement or conspiracy; and that you deliberately joined the conspiracy. In other words, the burden of proof would be on the Government to prove beyond a reasonable doubt all of these factors. And if you believe that you, you are not guilty of conspiracy, and you wish a jury to determine that, you may do so and you are not required to plead guilty to an offense, particularly an offense that you say that you did not commit. So, do you understand that?

      HE DEFENDANT RIGGS: Yeah, I understand that, but I don't know how I could win. I believe it may be in my best interests to plead guilty. I don't know what to, to do.

      THE COURT: Well, Mr. Riggs, I can't help you there, sir. I mean, I can't give you legal advice. I think you ought to listen to Mr. Stewart, your attorney, obviously, and the advice he gives you. The ultimate decision, however, is up to you, because you're the one that is charged and what happens, happens to you. So, you have to make

the decision. And, you know, that's what I can tell you. I've advised you of your rights. I understand you're saying that, as I understand, that you do not believe that you're guilty of conspiracy. But as I understand, you're saying you believe the Government can prove that, is that what you're saying?

THE DEFENDANT RIGGS: I admit that I've done wrong, I mean I don't know necessarily that I did the wrong I'm being accused of doing because there was never an agreement between me and anyone else for drugs to be sold. What drugs I sold I took upon myself to do that.

THE COURT: Yes, sir. But as you know, you're charged with participating in this conspiracy. You're charged with conspiracy.

THE DEFENDANT RIGGS: Well, what's the conviction rate of people challenging their conspiracy and taking it to jury trial?

THE COURT: Mr. Riggs, I can't give you legal advice. You have to depend on your counsel to advise you in that regard.

. . . .

THE DEFENDANT RIGGS: Your Honor, I think it's in my best interests to plead guilty.

THE COURT: All right. Let me tell you this, Mr. Riggs. If I do accept your guilty plea, and I don't have to accept it, but if I do accept it, you know, then it is accepted and you're not going to be able to withdraw it at a later time just because you change your mind. Do you understand that?

THE DEFENDANT RIGGS: Yes, Your Honor.

THE COURT: So, if you, if you plead guilty today, then that will be the, you'll be, I'll find you guilty of the offense and, again, you will not be able to withdraw your plea simply because down the road sometime, tomorrow, or a week, or a month, or whenever you decide, well, maybe I won't, don't want to plead guilty. So, it's an

important decision is what I'm trying to emphasize to you. So, do you wish to proceed?

    THE DEFENDANT RIGGS: Yes, Your Honor.

    THE COURT: All right. Now, I think I've asked you all of the questions that I need to ask you, then, Mr. Riggs. How do you now then plead to the charge contained in count one of the indictment, guilty or not guilty?

    THE DEFENDANT: I plead guilty, Your Honor.

(Tr. Plea Hr'g 33-39, May 3, 2010.)

In order to convict a defendant of a drug conspiracy, the government must prove beyond a reasonable doubt the following three elements: "(1) an agreement between two or more persons to engage in conduct that violates a federal drug law . . . ; (2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy." *United States v. Hickman*, 626 F.3d 756, 763 (4th Cir. 2010) (internal quotation marks and citation omitted). The conspiracy may be proved "inferentially and by circumstantial evidence." *Id.* (internal quotation marks and citation omitted). Because criminal conspiracies are "clandestine and covert," there is "frequently . . . little direct evidence of such an agreement." *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en banc).

In addition, a member of a conspiracy may not know its full scope or partake in its full range of activities. "[O]nce it has been shown that a conspiracy exists, the evidence need only establish a slight connection between the defendant and the

conspiracy to support conviction." *Id.* at 861 (internal quotation marks and citation omitted). "The term 'slight' does not describe the *quantum* of evidence that the Government must elicit in order to establish the conspiracy, but rather the *connection* that the defendant maintains with the conspiracy." *Id.*

I find that Riggs is not entitled to withdraw his guilty plea. In the first place, he has not presented a credible showing of actual innocence. While he claims that there was no agreement between him and his fellow travelers to Florida that the pills obtained would be later sold, the undisputed facts alone are ample proof of his guilt. At a minimum, his facilitation of the trips to Florida showed his participation in the conspiracy to distribute drugs by the crooked doctors to Riggs' travel companions.[1] Moreover, he admits that he did in fact sell some of the drugs obtained upon his return to Virginia. The fact that he used drugs himself, and did not know all of the other participants in the conspiracy, does not immunize him from a finding of guilt.

Riggs argues that for sentencing purposes he should not be attributed the quantity of drugs as recommended in the PSR and sought by the government, but that is a different question from his guilt of participation in the conspiracy.

---

[1] The Superseding Indictment charged Riggs with conspiring with the codefendants "and others, known and unknown." (Superseding Indictment ¶ 1.)

Based on the evidence before me, there is ample proof connecting Riggs to the charged conspiracy. While he has always attempted to minimize his involvement, he reasonably believed that it was in his best interests to plead guilty. This is not a case like *United States v. Mastrapa*, 509 F.3d 652, 658-59 (4th Cir. 2007), where the defendant's *Alford* plea was unsupported by any factual admission by the defendant or other evidence and was thus invalid.

Moreover, as is clear from the record of Riggs' change of plea hearing, Riggs knowingly and intelligently pleaded guilty to the conspiracy charge. Riggs is a mature individual with considerable past experience in the criminal justice system. He asked relevant questions during the plea hearing and obviously carefully considered the matter before making a final decision as to his plea. He had close assistance of counsel in his decision to plead guilty and there is no evidence that he received inadequate representation in that regard.

Finally, this case has been pending for many months, largely based on continuances sought by Riggs' replacement attorney in order to prepare for sentencing, and it would misuse judicial resources and likely prejudice the government to start anew with the prosecution.[2]

---

[2] Riggs' sentencing was initially scheduled for September 9, 2010. On August 27, 2010, his new attorney filed a Notice of Appearance and the sentencing was reset for November 29, 2010. On November 23, 2010, Riggs' attorney moved to continue the sentencing in order to confer further with his client. Sentencing was reset for February 7, 2011. Defense counsel moved again for a continuance on January 24, 2011, and

For these reasons, it is **ORDERED** that the Motion to Withdraw Guilty Plea (ECF No. 397) is DENIED.

ENTER: August 10, 2011

/s/ James P. Jones
United States District Judge

---

sentencing was reset for March 3, 2011. A third defense Motion for Continuance was filed on February 24, 2011, and sentencing was continued until June 21, 2011, when a hearing was finally held. The Motion to Withdraw Guilty Plea was filed on June 24, 2011. While these continuances were justified by the circumstances, they nevertheless produced a substantial delay in the resolution of the case.