**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 2:10CR00002-004 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **STEVEN RIGGS,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant, Steven Riggs, a federal inmate previously sentenced by this court, has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. This motion is before me for decision following an evidentiary hearing. For the reasons stated, I will deny the § 2255 motion.

I.

On May 3, 2010, Riggs pleaded guilty to one count of conspiring to distribute oxycodone, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846, while represented by court-appointed counsel but without the benefit of a plea agreement with the government. On August 27, 2010, before he was sentenced, Riggs obtained a new retained attorney, who was substituted for the appointed counsel.

A substantial delay then occurred while the new attorney prepared for sentencing. A lengthy all-day sentencing hearing was finally held on June 21, 2011, during which numerous witnesses, including Riggs, testified. After all of the evidence had been presented, I adjourned the hearing in order to further consider Riggs' objections to the calculation of his advisory sentencing range as proposed in the Presentence Investigation Report ("PSR"). A few days later, Riggs' attorney filed a Motion to Withdraw Guilty Plea (ECF No. 397) based on the evidence presented at the sentencing hearing. On August 10, 2011, I denied the motion because I found that Riggs had not shown sufficient cause to withdraw his plea. *United States v. Riggs*, 801 F. Supp. 2d 519, 525 (W.D. Va. 2011).

At a reconvened sentencing hearing held on September 27, 2011, I sustained in part and overruled in part defense counsel's objections to the PSR and sentenced Riggs to 210 months' imprisonment. Riggs appealed, but the court of appeals affirmed his sentence as well as my denial of his motion to withdraw his guilty plea. *United States v. Riggs*, 493 F. App'x 401, 403-05 (4th Cir. 2012) (unpublished), *cert. denied*, 133 S. Ct. 993 (2013).

Riggs' pro se Motion to Vacate, Set Aside, or Correct Sentence followed. Riggs presented four main claims:

(1) Counsel rendered ineffective assistance by advising Riggs to reject a plea offer by the government and by not raising certain arguments before and after sentencing;

(2) Counsel operated under a conflict of interest based upon his representation of a defendant in another proceeding;

(3) The sentence violated due process because Riggs was held accountable for co-conspirators' drug weights and Riggs' sentence was disproportionate to his co-conspirators' sentences; and

(4) A magistrate judge's comments about acceptance of responsibility prejudiced Riggs.

I denied the United States' Motion to Dismiss the § 2255 motion because Riggs presented a colorable claim that counsel rendered ineffective assistance by advising Riggs to reject a plea offer. I appointed counsel for Riggs and scheduled an evidentiary hearing for July 22, 2015. Riggs and his original court-appointed attorney testified at the hearing, and the parties thereafter submitted briefs. After careful consideration, I find that Riggs has failed to establish any claim warranting relief, and I will deny his § 2255 motion.

II.

Claims already decided on direct appeal may not be relitigated via a § 2255 motion. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Also, claims regarding trial or sentencing errors that could have been, but were not, raised on direct appeal are barred from review under § 2255 unless a defendant

demonstrates that he is "actually innocent" or shows both cause for the default and actual prejudice. *See, e.g.*, *Bousley v. United States*, 523 U.S. 614, 622 (1998).

Because Riggs either did raise or could have raised on appeal claims three and four about sentencing error and a magistrate judge's comments, these claims are procedurally barred from review under § 2255. Riggs does not establish both cause and prejudice or actual innocence to excuse a procedural default, and consequently, claims three and four will be denied.

III.

Riggs presents numerous claims of ineffective assistance of counsel, none of which entitle him to relief. A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984).[1] The first prong of *Strickland* requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," meaning that counsel's representation fell below an objective standard of reasonableness.[2] *Id.* at 687-88.

[1] If a petitioner has not satisfied one prong of the test, a court does not need to inquire whether he has satisfied the other prong. *Id.* at 697.

[2] *Strickland* established a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time." *Id.*

The second prong of *Strickland* requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, petitioners who assert that counsel's ineffective assistance caused the rejection of a plea offer "must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

A.

Riggs' only colorable claim made in his pro se 2255 motion was his allegation that his court-appointed attorney was ineffective for advising him to reject the government's plea offer. (Mem. Supp. § 2255 Mot. 84-86, ECF No. 497.) In fact, however, Riggs did not support that claim at the evidentiary hearing. Instead, Riggs claimed that counsel had never explained to Riggs how the drug weights from his co-conspirators' conduct would be attributed to Riggs in the guideline calculations. Riggs testified:

> If [counsel] would have explained to me that all of that could come in and be involved in figuring my drug weight, I never would have pled guilty without the agreement because I knew that if he would have explained all that to me, *now, I can say this now from a more*

> *informed standpoint*, I would never have . . . pled guilty without the agreement.

(Evidentiary Hr'g Tr. 30:16-22, ECF No. 550 (emphasis added).) Riggs further claimed that the attorney had advised him that if he decided to plead guilty without a plea agreement the drug weight would be no higher than that offered in the government's plea offer.[3] (*Id.* at 29: 3-6.)

I find that Riggs has failed to establish counsel's deficient performance. During the evidentiary hearing, the attorney denied ever advising Riggs that the drug weight at sentencing would not be higher than the amount specified in the plea offer. (*Id.* at 24:13-16.) Counsel explained how, "from the very beginning, [Riggs] had wanted to question the drug weight. He had a belief that he should not be accountable . . . for the total of the drugs that were distributed in this conspiracy," and, "thought he could successfully argue for a significantly less drug weight than was offered in the plea agreement." (*Id.* at 13:2-5, 14:16-18.) In response to Riggs' desire and after outlining the pros and cons of Riggs' options, counsel explained to Riggs that "if you want to argue drug weight one way to do it would be to plead guilty without the plea agreement, and then you can argue the

[3] The plea offer by the government provided that it would agree that Riggs would be held accountable to the equivalency of between 400 and 699.99 kilograms of marijuana, which would have resulted in a base offense level of 28. Riggs was ultimately held responsible for the equivalency of 772.18 kilograms of marijuana, which resulted in a base offense level of 30. *See* U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.8(D) (2009) (describing the conversion of oxycodone to an equivalent of marijuana).

drug weight." (*Id.* at 16:20-23.) Furthermore, counsel warned Riggs about the risk of not pleading guilty via a letter Riggs admittedly received and read:

> Enclosed please find a copy of the plea agreement that was provided us by the U.S. Attorney on March 31 . . . . He believes that if we have a trial he can prove drug weight and quantities way above and beyond what is in the [proffered] plea agreement.

(*Id.* at 44:16-45:1.) In his pro se § 2255 motion, Riggs claimed that "counsel was adamant that Riggs was guilty of conspiracy to distribute and that Riggs stood virtually no chance of prevailing if Riggs chose to pursue a jury trial." (Mem. Supp. § 2255 Mot. 17, ECF No. 497.) Yet, "Riggs was unwilling to accept the plea agreement because he was uninvolved with his codefendants." (*Id*. at 18.) In light of Riggs' statements to counsel that he wanted to challenge the drug weights attributed to him, it was not constitutionally deficient for counsel to advise that Riggs could do so if he did not accept the plea offer. *See, e.g.*, *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (recognizing a defendant is the ultimate decision maker about whether to plead guilty).

Furthermore, Riggs fails to establish a reasonable probability that he would have accepted the government's plea offer even if counsel had failed to explained to Riggs that he would be held accountable for co-conspirators' drugs. Riggs' realization, in hindsight, that the better outcome would have been to accept the plea offer is not a valid basis to vacate his sentence. *See United States v. Jackson*, 554

F. App'x 156, 165 (4th Cir. 2014) (Wilkinson, J., dissenting) (unpublished) ("[B]uyer's remorse should not be dressed in the garb of an ineffective assistance of counsel claim.").

The record establishes that Riggs always adamantly disclaimed any responsibility for any co-conspirator's related conduct. In his § 2255 motion signed under penalty of perjury, Riggs acknowledges that he informed counsel he "was unwilling to accept the plea agreement because he was uninvolved with his codefendants." (Mem. Supp. § 2255 Mot. 18, ECF No. 497.) During his change-of-plea hearing, Riggs similarly testified under oath:

> [W]hen you [the court] were, you know, describing the definition of a conspiracy it was a partnership between multiple persons undertaking criminal activity, I admit that I took other people to Florida. I admit that I, myself, sold a few pills. But the purpose and the intention of going down there wasn't for, you know, for a bunch of drugs to be sold. In fact, there was never any agreement between myself or anyone else for drugs to be sold . . . . I wasn't going to Florida with the intention of selling pills, but I did sell a few pills to be able to finance the next trip to Florida, if that makes any sense. The main purpose of going down there for the pills was because I had a drug problem, and OxyContin are really expensive, and, you know, I found a cheap way that I could obtain OxyContin, and I was just feeding my addiction. And when I took Mr. Jessee, who is the only co-conspirator that's listed on there that I took to Florida, but when I took him I didn't know he was going to take other people and they were going to engage in any kind of drug distribution conspiracy. But like I said, I admit that I did wrong, and I admit that I can't defend myself against the charge of trying to distribute the drugs because, like I said, I myself, I've already admitted I distributed drugs, but that wasn't

> the intent or purpose of going down there to Florida to obtain these drugs.
>
> . . . .
>
> . . . I don't know necessarily that I did the wrong I'm being accused of doing because there was never an agreement between me and anyone else for drugs to be sold. What drugs I sold I took upon myself to do that.

(Plea Hr'g Tr. 35:1-36:4, 37:14-19, ECF No. 363.) During his first sentencing hearing, Riggs again denied having been a part of the conspiracy and said he would not have pled guilty to conspiracy if he "didn't have a Government complicit court appointed attorney." (Sentencing Hr'g Tr. 176:13-15, ECF No. 400.)

Based upon my numerous opportunities to judge Riggs' credibility, and in light of the lengthy record of his efforts to escape responsibility for his involvement in the drug trafficking conspiracy, I do not believe that Riggs would have accepted the government's plea offer even had counsel advised him to do so. Riggs understood the principles of conspiracy, but simply believed, without any rational basis, that he could not be held responsible for it. I find that his counsel was credible in his testimony that he did not advise or even pressure Riggs to reject the government's plea offer. While there is no evidence that counsel affirmatively advised Riggs to accept the government's offer, I find as a matter of fact that it would have been fruitless had he done so. Riggs would have still rejected the plea

agreement, no matter what advice he had received about the wisdom of his decision.

As Riggs admitted at the evidentiary hearing, it has always been his position, even now, that he never engaged in any joint activity with others to sell drugs and that at most he had only sold on his own about 50 oxycodone pills obtained from a doctor in Florida. (Evidentiary Hr'g Tr. 32:10-25, ECF No. 550.) The government's rejected plea offer was that the parties would stipulate that Riggs' offense involved between 747 and 1305 80-milligram OxyContin pills. (Def.'s Ex. 6, ECF No. 547-6.) Riggs' original attorney's testimony, which I credit, was that Riggs (who had some college attendance) believed himself to be well-informed on legal issues, having had prior state drug convictions and a prior federal firearms conviction, and having studied legal materials in jail.[4] I simply reject any notion that Riggs would have accepted the government's plea offer under these circumstances, no matter what the advice of counsel. As he testified at the evidentiary hearing, he pleaded guilty at all only because he had hoped that he would receive a favorable sentence for assisting the government in a prosecution against the Florida doctor. (Evidentiary Hr'g Tr. 33:4-14, ECF No. 550.)

---

[4] Riggs testified at the sentencing hearing that "[f]rom all that I've read," the most he could be convicted of was a conspiracy to possess drugs. (Sentencing Hr'g Tr. 178:9-11, ECF No. 400.)

B.

Riggs also alleges that counsel rendered ineffective assistance before the sentencing hearing, including by improperly advising Riggs about the elements of conspiracy; not properly investigating the government's evidence; and misleading Riggs about the possibility of a downward departure after proffering evidence to the government. (§ 2255 Mot. 3-4, ECF No. 496.) None of Riggs' claims about counsel's conduct before the sentencing hearing warrants relief.

First, Riggs was adequately informed of the elements of conspiracy during the change-of-plea hearing. (Plea Hr'g Tr. 24:23-25:18, 26:1-28:14, 35:5-17, ECF No. 382.) Second, counsel was not deficient for not further investigating the charges or witnesses in light of Riggs' proffer to the government and guilty plea. Third, Riggs' reliance on bare assertions or conclusions to state these claims is insufficient to demonstrate deficient performance. Fourth, Riggs fails to establish a reasonable probability of a different outcome had counsel done what Riggs now complains about. Accordingly, these claims will be denied.

C.

Riggs also alleges that counsel rendered ineffective assistance during or after the sentencing hearing by not presenting certain arguments. For example, Riggs argues that counsel failed to argue the "legality of the prescriptions involved" and could have raised "more meritorious and potentially successful arguments." (§ 2255 Mot. 4, ECF No. 496; Mem. Supp. § 2255 Mot. 42, ECF No. 497.) Riggs similarly complains that counsel either failed to present the appellate claims "properly" or failed to present the "right" claims. (*Id.*)

None of the appellate claims Riggs now describes establishes a reasonable probability that he would have prevailed had counsel properly raised the right claims. *See, e.g.*, *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *see also Riggs*, 493 F. App'x at 402-05. Furthermore, the record reveals that counsel's arguments during the sentencing hearing resulted from reasonable strategic decisions worthy of deference, and Riggs fails to establish alternative arguments that had a reasonable probability of causing a different outcome. *See Id.* at 403-04. Accordingly, these claims will be denied.

IV.

Although Riggs alleges counsel had a conflict of interest, he fails to establish that counsel operated under an actual conflict of interest and that the alleged

conflict adversely affected counsel's performance by not pursuing a plausible, objectively-reasonable defense strategy or tactic. *See, e.g.*, *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980); *Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir. 2001). Accordingly, this claim will also be denied.

V.

For the foregoing reasons, none of Riggs' claims warrant relief, and I will deny the Motion to Vacate, Set Aside, or Correct Sentence. A separate Final Order will be entered herewith.

DATED: November 25, 2015

/s/ James P. Jones
United States District Judge